S10A0844. MILLS v. THE STATE.
(700 SE2d 544)

NAHMIAS, Justice.

Pennenton R. Mills, Jr., was convicted of malice murder and other crimes arising out of the shooting death of his girlfriend, Aisa Moye. He raises three issues in this appeal. For the reasons that follow, we affirm.[1]

1. The evidence at trial, viewed in the light most favorable to the verdict, showed the following.

Mills lived in a townhouse with the victim and her two-year-old son. Two months before the victim's death, the police were called to the residence, where the victim said that after she resisted Mills's sexual advances, he grabbed her around the neck, squeezed her face, and put a knife to her throat, threatening to cut her throat if she moved. Mills also threatened to kill the victim if he ever caught her

---

[1] The crimes occurred on December 4, 2001. Mills was indicted on February 19, 2002. At the conclusion of a three-day jury trial, Mills was convicted on March 5, 2003, of malice murder, felony murder, and possession of a firearm during the commission of a crime. The trial court merged the felony murder conviction into the malice murder conviction and sentenced Mills to life in prison plus five years consecutive. (We note that the felony murder conviction was properly vacated by operation of law rather than "merged" into the malice murder conviction. See *Malcolm v. State*, 263 Ga. 369, 372 (434 SE2d 479) (1993).) Mills filed a motion for new trial on May 1, 2003. Following a November 10, 2009 hearing, the trial court denied the new trial motion on November 18, 2009. Mills filed a timely notice of appeal on December 15, 2009. The case was docketed in this Court for the April 2010 Term and submitted for decision on the briefs.

cheating on him. The victim pushed the knife away, slicing her hand in the process. She filed a police report but was afraid to pursue an arrest warrant against Mills.

On the night of December 3, 2001, Mills and a friend had been smoking crack cocaine and marijuana for several hours. As they were driving to the townhouse, Mills was arguing with the victim over the phone, and the friend heard Mills say, "Don't make me kill you." At the residence, Mills, his friend, and the victim drank and smoked marijuana for several hours. Mills and the victim then went upstairs with the child, and Mills's friend fell asleep on the couch. Around midnight, the victim spoke with her sister on the phone, telling her, in a shaky voice, that she would have to call back later because she was busy right then.

According to his own testimony, a few hours later, Mills was criticizing the victim's parenting skills and complaining about how often a male friend of the victim was visiting the townhouse when he was not around. Mills was high and drunk, and he grabbed a 9mm handgun that he had previously loaded from the dresser and climbed into bed with the victim and the child with his finger on the trigger. Mills testified that he did this so that the victim would understand that he was serious. Mills then pointed the gun at the victim's head and pulled the trigger, killing her.

Mills's friend was awakened by the gunfire, and the next thing he knew, Mills was standing in front of him, saying that he had made a mistake and that he did not mean to kill the victim. The two men went upstairs, where the victim was "propped up" on the bed. The friend told Mills to call the police, advice his mother repeated to him several hours later. Mills picked up the telephone but then put it back down. In the following hours before the police arrived, Mills never did call the police or seek medical assistance for the victim.

Instead, Mills removed his bloody sweat pants, wrapped a shotgun in them, and handed them to his friend with instructions to wipe his fingerprints off the shotgun. The friend picked up the 9mm handgun and wrapped it up with the shotgun in the sweat pants before going out the back door of the townhouse. The friend tossed the sweat pants and the guns over the fence behind the complex before walking home, but he later made a statement to the police and directed them to the sweat pants and the guns.

The victim was killed by a single 9mm gunshot to the upper portion of her right cheek. In post-arrest statements and at trial, Mills claimed that he accidentally shot the victim when she "swatted" at the gun after he climbed into the bed with her and the child. However, a firearms expert who tested the gun testified that the overall design of the gun, and particularly its safety features, rendered it highly unlikely, if not virtually impossible, that the gun

was accidentally discharged in the manner asserted by Mills. Moreover, the medical examiner testified that the barrel of the gun was touching the victim's face when it was fired.

2. Mills contends that the evidence presented at trial and summarized above was insufficient to authorize a rational jury to find him guilty beyond a reasonable doubt of malice murder, felony murder, and possession of a firearm during the commission of a crime. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). Mills's only challenge to his firearm possession conviction is that the evidence was insufficient to support his conviction for murder, which was the predicate crime. And Mills's challenge to the felony murder conviction is moot, because that conviction was vacated by operation of law, see footnote 1 above. See *Mangrum v. State*, 285 Ga. 676, 682 (681 SE2d 130) (2009) (holding that a claim of insufficient evidence to support a conviction that was vacated by operation of law is moot). Thus, this enumeration of error depends entirely on Mills's challenge to the sufficiency of the evidence to support his conviction for malice murder.

Mills argues that he did not intend the victim's death, and he therefore did not commit "murder." However, malice murder is committed when a person, "unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a). Express malice requires a "deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof," and implied malice exists "where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." OCGA § 16-5-1 (b). Thus, the jury was authorized to find Mills guilty of malice murder even if it concluded that he did not intend the victim's death, because implied malice is sufficient.

The evidence supported a finding of both express and implied malice. Mills had threatened to kill the victim in the past if he caught her cheating on him and had cut her while holding a knife to her throat. Mills again threatened to kill the victim just hours before the shooting. Later, while high and drunk, Mills complained that the victim had another man coming to their residence too frequently, and, to show he was serious, Mills climbed into bed with the victim holding a loaded 9mm handgun with his finger on the trigger, pointed the gun at her, and shot her in the head while her two-year-old son was on the bed next to her. He then failed to seek medical aid and instead sought to dispose of the murder weapon. This evidence was sufficient to show from the external circumstances that Mills caused the victim's death with deliberate intention, thereby establishing express malice. In addition, there was no "considerable

provocation" for the shooting even under Mills's own version of events, and a rational jury could find that the circumstances surrounding the killing showed that Mills had an abandoned and malignant heart, thereby establishing implied malice. Accordingly, we reject this enumeration of error. See *Jackson v. Virginia*, 443 U. S. at 319.

3. Mills contends that the trial court abused its discretion by admitting out-of-court statements the victim made to her sister about prior difficulties between Mills and the victim. Specifically, Mills challenges the sister's testimony that the victim said that Mills cut her during the course of an argument and that Mills threatened to kill her if she were ever unfaithful. According to Mills, this testimony was hearsay, and the trial court erred in admitting it under the necessity exception to the hearsay rule. See OCGA § 24-3-1 (b). Under Georgia law,

> there are three basic requirements for the admission of hearsay under the necessity exception: (1) the declarant of the statement is "unavailable," (2) the declarant's statement "is relevant to a material fact and . . . more probative on that material fact than other evidence that may be procured and offered," and (3) the statement exhibits specific indicia of reliability.

Paul S. Milich, Georgia Rules of Evidence § 19.32 (2d ed.) (quoting *Chapel v. State*, 270 Ga. 151, 155 (510 SE2d 802) (1998)). Accord *Arrington v. State*, 286 Ga. 335, 341 (687 SE2d 438) (2009); *Watson v. State*, 278 Ga. 763, 765 (604 SE2d 804) (2004). Mills does not dispute that the first two requirements were met, but he maintains that the victim's statements were not reliable enough because no testimony was elicited from the sister about her relationship with the victim and "[t]here was no evidence that the sisters were close."

Mills's first point — that the victim's sister did not testify about the closeness of her relationship with the victim — is factually accurate but legally irrelevant. The specific indicia of reliability need not be established by the testifying witness alone. Mills's second point — that there was no evidence that the sisters were close — is legally relevant but factually inaccurate. In his own testimony, Mills described the relationship between the victim and her sister as "real close." Thus, the trial court did not abuse its discretion in admitting the sister's testimony. See *Watson*, 278 Ga. at 765.

Moreover, even if the trial court did err, the error was harmless. The other evidence of Mills's guilt was overwhelming and was corroborated by his own testimony, so it is highly probable that any error did not contribute to the verdict. See *Lindsey v. State*, 282 Ga.

447, 450 (651 SE2d 66) (2007).

4. Finally, Mills asserts that the trial court erred in refusing an instruction on the affirmative defense of accident. Mills points to his testimony that he kept the gun at his side, did not know it was loaded, and did not point it at the victim, and that the gun went off accidentally when the victim smacked it as he was getting back out of the bed.

OCGA § 16-2-2 provides that "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." To succeed on an affirmative defense of accident, the defendant must show that he acted without criminal intent, was not engaged in a criminal scheme, and was not criminally negligent, that is, he did not act in a manner showing an utter disregard for the safety of others who might reasonably be expected to be injured thereby. See *Wilson v. State*, 279 Ga. 104, 105 (610 SE2d 66) (2005); *Davis v. State*, 269 Ga. 276, 279 (496 SE2d 699) (1998). Claims by a defendant that he " 'didn't mean to do it' and 'it was an accident' " are insufficient without more to authorize a charge on accident. *McDade v. State*, 270 Ga. 654, 657 (513 SE2d 733) (1999).

Mills contends that if the jury believed his trial testimony, it could have found in his favor on an affirmative defense of accident. However, " '[d]eath caused by criminal negligence is not an accident.' " *Yeager v. State*, 281 Ga. 1, 3 (635 SE2d 704) (2006) (citation omitted). Although Mills said that he did not fire the gun intentionally, he also testified that he climbed into bed with the victim and her two-year-old son holding a loaded handgun with his finger on the trigger because he wanted the victim to understand the seriousness of his concerns about infidelity. And while Mills initially denied pointing the gun at the victim and said he kept the gun by his side, he later admitted that he did point the gun at the victim's head and that it went off when she smacked it away. Misuse of a firearm in the manner described by Mills shows a degree of culpability that constitutes criminal negligence. See *Stewart v. State*, 261 Ga. 654, 654 (409 SE2d 663) (1991) (holding that the trial court was not required to give an accident instruction where the defendant said pre-trial that he aimed a loaded gun at the victim's face to show her what "being under the gun" was like, but then testified at trial that while sitting next to the victim, he pulled a loaded gun across his lap, planning to show her what "being under the gun was like," and the gun went off when he was putting it in his hand, because under both scenarios, the defendant showed an utter disregard for the victim's safety which was criminally negligent). Accordingly, the trial court did not err in rejecting Mills's request to instruct the jury on the

affirmative defense of accident.
*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 4, 2010.

*Barbara B. Claridge*, for appellant.
*Ashley Wright, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mary K. Ware, Assistant Attorney General*, for appellee.