311 Ga. 634
FINAL COPY


S21A0152.  ROGERS v. THE STATE.


WARREN, Justice.

Robert Rogers was convicted of felony murder in connection with the shooting death of Richard Trantham, Jr.  On appeal, Rogers contends that the evidence was insufficient to support his conviction and that the trial court committed plain error when it admitted certain testimony from a State witness.  Seeing no reversible error, we affirm.[1]

---

[1] Trantham was killed on March 26, 2016.  After Rogers's first trial ended in a mistrial, a Wayne County grand jury re-indicted him on June 5, 2017, charging him with malice murder, felony murder predicated on aggravated assault, aggravated assault with a deadly weapon, and conspiracy to commit aggravated assault.  Rogers was tried from August 28 to September 1, 2017.  The jury found him not guilty of malice murder, but guilty of the other three counts.  The trial court sentenced Rogers to life in prison without parole for felony murder, and the remaining counts were merged for purposes of sentencing.  Rogers filed a timely motion for new trial on September 28, 2017, and he amended it through new counsel on January 17, 2019.  After a hearing, the trial court denied the motion, as amended, on August 9, 2019.  Rogers initially failed to appeal in a timely manner, but the trial court granted his motion for an out-of-time appeal, after which Rogers filed a timely notice of appeal.  This case was docketed in this Court to the term beginning in December 2020 and submitted for a decision on the briefs.

1.    Viewed in the light most favorable to the verdict, the evidence presented at trial shows the following.  On March 26, 2016, Trantham and two of his friends were inside his mobile home on Saw Mill Road in Wayne County when Andy O'Quinn — an acquaintance — showed up.  After spending a few minutes in the living room, O'Quinn asked Trantham to "walk out with him to get a beer."  While the two were outside, the friends who were still inside the trailer heard a gunshot, went to the back door, and saw Trantham lying on the back porch.  When emergency personnel arrived at the residence, they found Trantham deceased, with a "large hole" in the center of his chest.  Some drug paraphernalia was found in the pockets of Trantham's shorts.  An autopsy revealed that Trantham died from a single, high-velocity gunshot wound to the back, though the range from which the bullet was fired could not be determined.

The victim's brother, David Trantham, testified that Trantham had a drug problem and had "slipped back" into his drug habit before his death.  According to David, Trantham had "gone downhill quite a bit" and had robbed Dana Fossett, a woman who had provided

Trantham with drugs. Trantham had told David that, as a result of the robbery, "they had took a hit out on him, and he was pretty sure something was going to happen."

At trial, O'Quinn — who was indicted separately for Trantham's murder but obtained a plea offer — testified that, on the day of the shooting, he was contacted by Rogers, whom he had not seen in 15 or 20 years. Rogers told O'Quinn that he wanted to "get together and catch up," so Rogers picked up O'Quinn at his home, and they drove in the general direction of Trantham's residence. Rogers asked O'Quinn where Trantham lived, explaining that Trantham "owed some money" and that Rogers "just wanted to watch him and scare him." The two men then stopped by Fossett's house and performed some landscaping work for her. While there, Rogers and Fossett had a brief conversation, during which O'Quinn overheard Fossett talking about Trantham with Rogers. After the visit to Fossett's house, Rogers took O'Quinn home and said he would call O'Quinn later.

Later that day, O'Quinn testified, he picked up Rogers at a local

store, and they drove in O'Quinn's car toward Trantham's home. Rogers got out of the car on Saw Mill Road "between some houses and a field" — ostensibly to "watch" and "scare" Trantham — while O'Quinn continued to Trantham's residence, where he spent some time talking with Trantham and the others who were inside. At some point, O'Quinn walked outside to get a beer and Trantham followed him out. The two men then sat in O'Quinn's car and had a brief conversation. Trantham then exited the car and walked back toward the mobile home, at which point O'Quinn backed out of the driveway and drove home. O'Quinn testified that he did not hear a gunshot. He also testified that he did not pick up Rogers because Rogers had told him earlier that Rogers was going to walk back to Rogers's car, which was parked at the local store.

Rogers was arrested several days after the shooting and was interviewed by a GBI Special Agent, Richard Dyal. During that interview, an audio recording of which was played for the jury at trial, Rogers initially denied being present at the crime scene, but he eventually admitted to being involved in the killing. Specifically,

4

Agent Dyal expressed his belief that Rogers shot Trantham, and he asked Rogers about his motivation. Rogers responded that he wanted to "scare" Trantham because Trantham had stolen cash and other items from Rogers's house about three months earlier. To that end, Rogers said, he went to Trantham's residence, positioned himself outside the mobile home with a scoped rifle, and waited for Trantham to come out. When Trantham came out on the back porch, Rogers aimed for the light on the porch, but shot "a little to the left" and hit Trantham instead. Rogers then ran off and threw the rifle in the woods. In addition to the interview, other evidence showed that Rogers told the same story — that he shot at the porch light to scare Trantham — to his mother and daughter.

Rogers testified in his own defense. He admitted that he went to Trantham's house with O'Quinn on the night of March 26 to "confront" Trantham about the theft of items from his house months earlier. But Rogers denied that he fired a gun or that he even had a gun in his possession, and he claimed that he did not know who fired the shot that killed Trantham. Rogers also claimed that he lied to

5

the police about the shooting to protect himself and his family from the unknown shooter.

2. Rogers first contends that the evidence presented at trial was insufficient to support his conviction because, he says, it did not exclude every reasonable hypothesis of innocence — particularly the hypothesis that someone else shot Trantham. See OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). However, the principle set forth in OCGA § 24-14-6 on which Rogers relies "applies only where the State's case against the defendant was wholly circumstantial." *Jackson v. State*, 310 Ga. 224, 228 (850 SE2d 131) (2020) (citation and punctuation omitted). Here, the case against Rogers was not wholly circumstantial; the State presented at least some direct evidence of Rogers's guilt, namely, the recording of Rogers's interview with Agent Dyal, where Rogers admitted that he intentionally fired the bullet that hit Trantham. See id. See also *Eggleston v. State*, 309

6

Ga. 888, 891 (848 SE2d 853) (2020) (testimony that defendant had confessed to shooting the victim was "direct evidence of his guilt"). And even though Rogers later testified at trial that he did not shoot at all, the jury was authorized to reject Rogers's trial testimony and instead to credit some or all of the statements Rogers made during his interview with Agent Dyal. See *Martin v. State*, 306 Ga. 538, 541 (832 SE2d 402) (2019) ("The jury, as the sole arbiter of witness credibility, was entitled to discredit [defendant's exculpatory] testimony . . . ."); *Donaldson v. State*, 302 Ga. 671, 673 (808 SE2d 720) (2017) ("[I]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient.") (citation and punctuation omitted).

In challenging the sufficiency of the evidence, Rogers also contends that the State failed to rebut the affirmative defense of accident beyond a reasonable doubt. We disagree. As discussed above, the State's evidence showed that Rogers intentionally fired a

gun in Trantham's direction, which rebuts any defense of accident.

See OCGA § 16-2-2 ("A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."); *Mills v. State*, 287 Ga. 828, 832 (700 SE2d 544) (2010) ("To succeed on an affirmative defense of accident, the defendant must show that he acted without criminal intent, was not engaged in a criminal scheme, and was not criminally negligent, that is, he did not act in a manner showing an utter disregard for the safety of others who might reasonably be expected to be injured thereby.").[2] We conclude that the evidence presented at trial was sufficient to authorize a rational jury to find Rogers guilty of felony murder

---

[2] Notably, even though the jury was charged on the defense of accident, we do not discern *any* evidence of accident in this case. Rogers's trial testimony, if believed — that he was not involved in shooting Trantham — showed that he was innocent of the aggravated assault that formed the basis of his felony murder charge, whereas the State's evidence — including Rogers's statement to the police — showed that Rogers intentionally fired a gun in Trantham's direction, which would authorize the jury to find him guilty of aggravated assault, among other crimes. This does not appear to leave any room for an accident defense; there was no evidence, for instance, that the gun discharged accidentally or that Rogers discharged the gun but somehow did so with no criminal intent or negligence. See OCGA § 16-2-2; *Mills*, 287 Ga. at 832.

beyond a reasonable doubt.  See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

3. Rogers contends that the trial court erred when it admitted Agent Dyal's testimony about the "real story" behind Rogers's motive in shooting Trantham.  On redirect examination, the prosecutor elicited the following testimony from Agent Dyal:

> PROSECUTOR: Now, [defense counsel] made a big point about you going back and forth, and confronting [Rogers] on several occasions about the true story, the real story, what you thought had happened and why he was being not truthful with you about the break-in being the reason he went out there.  What was the real story that you thought had happened?
> AGENT DYAL: I thought that Mr. Trantham had owed money to [Fossett] for drugs, had ripped or stolen the money, that Mr. Rogers, being an associate, had been sent out there to kill Mr. Trantham.

Rogers argues that the trial court should have excluded this testimony because, he claims, it clearly violated several provisions of the Evidence Code.[3]

---

[3] Specifically, Rogers contends that Agent Dyal's statement referred to facts outside his personal knowledge, in violation of OCGA § 24-6-602; invaded the province of the jury concerning witness credibility, in violation of OCGA § 24-6-620; and was improper layperson opinion testimony, in violation of

As Rogers concedes, however, he did not object at trial to the testimony in question, so his claim can be reviewed only for plain error. See *Westbrook v. State*, 308 Ga. 92, 101 (839 SE2d 620) (2020). To succeed on a plain-error claim, the defendant must demonstrate an error that was not "affirmatively waived," that was "clear and not open to reasonable dispute," that "probably affected the outcome of his trial," and that "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Bozzie v. State*, 302 Ga. 704, 707 (808 SE2d 671) (2017) (citation and punctuation omitted). "The failure to meet one element of this test dooms a plain error claim." *Denson v. State*, 307 Ga. 545, 548 (837 SE2d 261) (2019).

Here, even assuming (without deciding) that the trial court erred in admitting Agent Dyal's statement about Rogers's motive, Rogers has failed to show that this alleged error likely affected the outcome of the trial. To begin, during the recorded interview with Rogers (the admission of which he does not challenge), Agent Dyal

OCGA § 24-7-701. As explained below, we need not decide whether any of these provisions were violated.

repeatedly expressed his belief that Rogers was lying when he said that he just wanted to scare Trantham in retaliation for stealing items from his house months earlier. Thus, the jury would not have been surprised by Agent Dyal's testimony that he believed Rogers had some other motive for the shooting. See *Thompson v. State*, 304 Ga. 146, 153 (816 SE2d 646) (2018) (defendant failed to show harm from detective's testimony that she believed defendant was the shooter, in part because the jury would not have been surprised to know that the detective believed in defendant's guilt). See also *Pyatt v. State*, 298 Ga. 742, 755 (784 SE2d 759) (2016) ("[C]omments upon the patently obvious generally pose little, if any, danger of prejudice.") (citation and punctuation omitted).

Moreover, evidence independent of Agent Dyal's statement showed that Rogers may have killed Trantham at Fossett's behest. Trantham's brother testified that before the shooting, Trantham said that he had robbed Fossett, who was his drug supplier, and that "they had took a hit out on him" as a result of the robbery. Other testimony showed that Rogers had a relationship with Fossett and

11

that on the day of the shooting, Rogers stopped by Fossett's house and had a conversation with her about Trantham. Because Agent Dyal's statement merely conveyed information that the jury could have surmised from his interview with Rogers and from other evidence, it is unlikely that this statement affected the jury's verdict. Rogers's claim of plain error therefore fails. See *Thompson*, 304 Ga. at 153. See also *Mosley v. State*, 298 Ga. 849, 852-853 (785 SE2d 297) (2016) (rejecting defendant's plain-error claim because the challenged testimony was cumulative of properly admitted evidence); *McKinney v. State*, 307 Ga. 129, 135 (834 SE2d 741) (2019) (same).

*Judgment affirmed. All the Justices concur.*

Decided June 1, 2021.

Murder. Wayne Superior Court. Before Judge Lane.

*Michael W. Tarleton*, for appellant.

*Jackie L. Johnson, District Attorney, Thomas E. Buscemi, John B. Johnson III, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.