**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 22, 2024**

# In the Court of Appeals of Georgia

A23A1429. THOMPSON v. THE STATE.

WATKINS, Judge.

Jason Thompson seeks reversal of the denial of his amended motion for new trial following his conviction for several charges resulting from his act of shooting his ex-girlfriend in her head. Thompson argues that the evidence was insufficient to sustain most of his convictions, that the trial court erred in charging the jury, and that he received ineffective assistance of trial counsel. For the reasons that follow, we discern no error, and we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor determine witness credibility, which are tasks that fall within the exclusive province of the jury, but only determine if the evidence was

sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

So viewed, the evidence shows that Thompson and the victim were in a volatile on-again-off-again relationship for years. The victim specifically described her relationship with Thompson as "toxic" and "violent," while even Thompson described it as "toxic" and "intense." In fact, the victim told a friend at one point that she was too scared to leave Thompson. As we discuss in more detail below, Thompson was violent towards the victim on several occasions.

The violence against the victim culminated on June 4, 2013. At that time, Thompson was living with the victim, but she had expressed to him that she wanted him to move out. Thompson was not financially contributing to household expenses and, as a result, the victim had to obtain a title loan to pay her bills. After receiving the funds from the title loan, the victim called Thompson, who was at her house, to request her bank account number so that she could deposit the money. Thompson refused to provide the information and instead insisted that she come home.

---

[1] (Citations omitted.) *Allison v. State*, 356 Ga. App. 256 (846 SE2d 222) (2020).

Once the victim returned home, Thompson had her sit on the couch. Thompson started yelling at the victim that he was tired of her blaming everything on him, and he pulled out a gun. Afraid that Thompson would strike her with the gun, the victim covered her face with a pillow from the couch. Then the victim felt Thompson pointing the gun to her left temple. Using the pillow, the victim tried to move the gun away from her head. Thompson then yelled at her "look at me." Once Thompson took the gun away from her head, the victim looked at him. Then Thompson put the gun in his mouth, and the victim closed her eyes and covered her face with the couch pillow. Thompson took the gun out of his mouth and the victim grabbed at the barrel of the gun, but Thompson shot the victim in the head.

The victim never lost consciousness, but she was unable to speak after being shot. The victim thought to herself, "he finally got me, that son of a b*tch got me." Thompson called 911 and the victim was taken to the hospital. Because she was unable to speak, officers who met her at the hospital had to communicate with her by having her blink and squeeze their hands. At the time of trial the bullet was still in the victim's brain, and, as a result of her injuries, the victim had to relearn how to do

many life skills, including talking. After being shot she also suffered from epilepsy and could not be left alone in case she had a seizure.

Thompson was indicted on charges of attempted murder, aggravated battery family violence, aggravated assault family violence, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. A jury found Thompson guilty of all charges, except for possession of a firearm by a convicted felon, to which Thompson pled guilty. At sentencing, the trial court merged Thompson's convictions for aggravated battery and aggravated assault into his conviction for attempted murder. Following the trial court's denial of his amended motion for new trial, Thompson appealed.

1. Thompson first argues that the evidence was insufficient to sustain his conviction for attempted murder of the victim. We disagree.

Georgia law provides that "[a] person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being."[2] "Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances

---

[2] OCGA § 16-5-1 (a).

4

capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart."[3] "'[I]mplied malice,' as employed in OCGA § 16-5-1 (b), is a term which has been defined to mean conduct exhibiting a reckless disregard for human life."[4] Specifically, the Supreme Court of Georgia has held that

> extremely negligent conduct, which creates what a reasonable man would realize to be not only an unjustifiable but also a very high degree of risk of death or serious bodily injury to another or to others – though unaccompanied by any intent to kill or do serious bodily injury – and which actually causes the death of another, may constitute murder. Reckless disregard for human life may be the equivalent of a specific intent to kill. Evidence that the defendant acted in reckless disregard for human life is, for purposes of demonstrating his guilt of the crime of malice murder, as equally probative as evidence that he acted with a specific intent to kill.[5]

---

[3] OCGA § 16-5-1 (b).

[4] (Citation and punctuation omitted.) *Burney v. State*, 309 Ga. 273, 277 (1) (a) (845 SE2d 625) (2020).

[5] (Citation and punctuation omitted.) Id. at 277-278 (1) (a) (finding sufficient evidence to sustain malice murder conviction when the evidence showed that defendant bound an elderly man to a chair and left him there despite knowledge of his advanced age and having been informed of his need for life-saving medications).

Moreover, "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."[6] Intentionally shooting someone can be a substantial step toward the commission of the crime of murder.[7]

> When evaluating the sufficiency of evidence as a matter of due process under the Fourteenth Amendment to the United States Constitution, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. [The reviewing court] views the evidence in the light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.[8]

Thompson contends that the evidence presented at trial did not demonstrate beyond a reasonable doubt that he intended to shoot the victim as opposed to her accidentally being shot during a struggle over the gun when he attempted to take his own life. We hold, however, that there was sufficient evidence from which the jury

---

[6] OCGA § 16-4-1.

[7] See *Wright v. State*, 365 Ga. App. 415, 420 (1) (878 SE2d 751) (2002).

[8] (Citations and punctuation omitted.) *Burney,* 309 Ga. at 277 (1) (a).

could find express or implied malice to kill the victim.[9] With regard to express malice, the record contains extensive evidence of Thompson's prior intentional acts of violence against the victim.

---

[9] See *Mills v. State*, 287 Ga. 828, 830-831 (2) (700 SE2d 544) (2010). The Supreme Court held in *Mills* that

[t]he evidence supported a finding of both express and implied malice. [The defendant] had threatened to kill the victim in the past if he caught her cheating on him and had cut her while holding a knife to her throat. [The defendant] again threatened to kill the victim just hours before the shooting. Later, while high and drunk, [the defendant] complained that the victim had another man coming to their residence too frequently, and, to show he was serious, [the defendant] climbed into bed with the victim holding a loaded 9mm handgun with his finger on the trigger, pointed the gun at her, and shot her in the head while her two-year-old son was on the bed next to her. He then failed to seek medical aid and instead sought to dispose of the murder weapon. This evidence was sufficient to show from the external circumstances that [the defendant] caused the victim's death with deliberate intention, thereby establishing express malice. In addition, there was no "considerable provocation" for the shooting even under [the defendant's] own version of events, and a rational jury could find that the circumstances surrounding the killing showed that [the defendant] had an abandoned and malignant heart, thereby establishing implied malice.

For example, one of the victim's friends testified that she heard Thompson threaten to kill the victim over the phone and tell the victim that he wished she was dead. Also, the victim and a mutual friend testified about a disturbing incident in 2012. Thompson invited a mutual male friend over to the victim's house, but when Thompson arrived, severely intoxicated, and found the male friend there, he became enraged and tried to fight the friend after accusing the victim of cheating with this friend. Thompson lunged at the victim and had to be physically restrained by another person. As Thompson was being forcibly removed from the victim's residence, he punched a hole in the hallway, but when he returned a while later, he was angry that the male friend was still at her house. Thompson threw his motorcycle helmet at the victim, which struck her in the face and then bounced off a window sill. The helmet then struck the victim's dog who was sitting in her lap, splitting the dog's head open severely enough that the victim could see the dog's brain. Despite the victim taking the dog immediately to an emergency veterinarian, the dog died of this injury. Thompson largely corroborated the victim's and the friend's accounts of this incident.

The victim also testified that a few months before the shooting she told Thompson to leave her home, and he responded by pinning her down, holding her by her neck, and choking her. Based on this extensive history of intentional violence directed at the victim, the jury would have been authorized to find actual malicious intent to kill the victim.[10]

Moreover, there was sufficient evidence for the jury to infer malice as well. Both the victim and Thompson agree that he waved a loaded and cocked weapon close to her head. This is "extremely negligent" conduct which carried "a very high degree of risk of death or serious bodily injury" to the victim *even if* it was "unaccompanied by any intent to kill or do serious bodily injury[.]"[11] Accordingly, the evidence was sufficient to sustain Thompson's conviction for attempted murder.[12]

---

[10] Evidence of prior acts of domestic violence are relevant to establish that the defendant's conduct was not accidental. See *Merritt v. State*, 311 Ga. 875, 889 (6) (860 SE2d 455) (2021) (defendant was unable to show plain error for admission of evidence of prior acts of domestic violence against the victim because such evidence contradicted his accident defense).

[11] *Burney*, 309 Ga. at 277-278 (1) (a).

[12] See *Brockman v. State*, 292 Ga. 707, 729 (15) (739 SE2d 332) (2013) (superceded by statute on other grounds) (holding that the defendant "acted with criminal negligence when he pointed the loaded gun at [the victim], rendering the defense of accident inapplicable.")

2. In three claims of error, Thompson contends that his convictions for aggravated battery and aggravated assault must be reversed and that the trial court incorrectly charged the jury as to aggravated battery. These claims of error are moot.

The jury found Thompson guilty of attempted murder, aggravated battery family violence, and aggravated assault family violence; however, the trial court merged the battery and assault convictions into the attempted murder conviction for purposes of sentencing. We have affirmed Thompson's attempted murder conviction; accordingly, Thompson's claims of error with regard to his merged battery and assault convictions are moot.[13]

3. Thompson contends that his conviction for possession of a firearm during the commission of a felony cannot stand. This argument was waived by Thompson's failure to raise it in the trial court.

---

[13] See *Long v. State*, 287 Ga. 886, 888-889 (1) - (2) (700 SE2d 399) (2010) (holding that a claim of insufficient evidence and a contention regarding an erroneous jury charge on a conviction that has been merged into another conviction for sentencing purposes was moot).

Thompson was indicted for possession of a firearm during the commission of the felony of aggravated battery. With regard to his charge for aggravated battery, Thompson was indicted for "maliciously caus[ing] bodily harm to [the victim] by depriving her of her ability to speak" by "discharging a firearm at the head of [the victim.]" Thompson contends that the indictment is void as to the aggravated battery count which required an allegation that Thompson "depriv[ed the victim] of a member of [] her body, by rendering a member of [the victim's] body useless, or by seriously disfiguring [the victim's] body or a member thereof."[14] Thompson alleges that the victim's voice is not a member of her body.

Thompson's attack in this regard is not to the sufficiency of the evidence of his possession of a firearm, rather it is to the form of the indictment.

> In Georgia, a defendant has a right to be tried upon an indictment which is perfect in form and substance. However, this right can, under certain circumstances, be waived if a defendant fails to timely challenge the indictment. A challenge to an indictment is typically made through a demurrer to the indictment. A demurrer to an indictment may be general or special. A general demurrer challenges the very validity of the indictment and may be raised anytime; the special objects merely to its form or seeks more information and must be raised before pleading to the

---

[14] OCGA § 16-5-24 (a).

indictment. A special demurrer is waived if not raised before pleading to the merits of the indictment. On the other hand, because a general demurrer attacks the legality of an indictment, it is permissible to raise this ground after verdict by a motion in arrest of judgment even if there was no earlier objection. A motion in arrest asserts that the indictment contains a defect on its face affecting the substance and real merits of the offense charged and voiding the indictment, such as failure to charge a necessary element of a crime. Likewise, an oral objection or motion to quash based upon the same grounds as a general demurrer can be asserted anytime during the trial. A motion for directed verdict of acquittal is not the proper way to contest the sufficiency of an indictment. A motion for a directed verdict of acquittal addresses the sufficiency of the evidence, not the sufficiency of the underlying indictment. When an indictment is absolutely void in that it fails to charge the accused with any act made a crime by the law and, upon the trial, no demurrer to the indictment is interposed and the accused is convicted under the indictment and judgment is entered on the verdict, the accused's proper remedy is a motion in arrest of judgment or habeas corpus. A motion for new trial is not the proper method to attack the sufficiency of an indictment and does not provide a basis for this Court to review the indictment. Based on the above, it is clear that objections to defects in an indictment can be waived, except when the defects are so great that the accusation is absolutely void. However, when a claim that an accusation or indictment is absolutely void is not properly

12

asserted in the trial court, it can be reviewed on appeal only through a habeas corpus proceeding.[15]

Here, Thompson's trial counsel did not file a general demurrer or a motion in arrest of judgment objecting to the form of the indictment; accordingly this claim of error leaves nothing for us to review.

4. Lastly, Thompson contends that he received ineffective assistance of trial counsel in several regards. Again, we disagree.

Georgia law is clear that

[t]o prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*[16]. If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

---

[15] (Citations and punctuation omitted.) *McKay v. State*, 234 Ga. App. 556, 558-560 (2) (507 SE2d 484) (1998).

[16] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984).

Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential. The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted. In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy. Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result. Indeed, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.[17]

We will address Thompson's allegations of ineffective assistance in turn.

(a) Motion for Directed Verdict as to Attempted Murder

Thompson contends that his trial counsel was ineffective for failing to move for a directed verdict of acquittal as to his attempted murder charge because the evidence was insufficient. For the reasons described in Division 1, however, the evidence was

---

[17] (Citations and punctuation omitted.) *Walker v. State*, 349 Ga. App. 188, 192-193 (4) (825 SE2d 578) (2019).

sufficient to convict Thompson of attempted murder, so such a motion would have been meritless. Accordingly, Thompson's counsel was not ineffective in this regard.[18]

*(b) Motion in Arrest of Judgment for Charges of Aggravated Battery and Possession of a Weapon During the Commission of a Felony*

Thompson's allegation that his trial counsel should have filed a motion in arrest of judgment[19] centers around his claim that the indictment was fatally defective as to the charge of aggravated battery for failing to identify a member of the victim's body which she was deprived of, which was rendered useless, or which was seriously disfigured. Thompson claims that because depriving the victim of her ability to speak, as alleged in the indictment, does not identify a member of her body, the indictment

---

[18] See *Range v. State*, 289 Ga. App. 727, 731 (4) (658 SE2d 245) (2008) ("[T]rial counsel's failure to move for a directed verdict did not constitute ineffective assistance. The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. [Because] the evidence presented was sufficient to sustain [the defendant's] conviction[,] he was not entitled to a directed verdict and counsel's failure to move for the same does not entitle him to a new trial.") (citation omitted).

[19] See OCGA § 17-9-61 ("When a judgment has been rendered, either party may move in arrest thereof for any defect not amendable which appears on the face of the record or pleadings. . . . A motion in arrest of judgment must be made during the term at which the judgment was obtained.").

was void as to the charges of aggravated battery and possessing a firearm during the commission of aggravated battery.

Thompson makes an interesting point,[20] nonetheless, Thompson's argument fails in the context of an ineffective assistance of counsel claim. The parties have not identified, nor has our research uncovered, any Georgia case law addressing whether depriving a victim of her voice constitutes causing "bodily harm to another by depriving . . . her of a member of . . . her body, by rendering a member of . . . her body useless, or by seriously disfiguring . . . her body or a member thereof."[21]

> Because existing precedent does not resolve whether [a voice] is included in the definition of bodily "member," [Thompson] cannot show that trial counsel's failure to file a [motion in arrest of judgment] claiming that the [voice] is not a bodily "member" amounted to deficient performance. Where [appellate courts] have not yet squarely decided an issue, trial counsel's failure to raise a novel legal argument does not constitute ineffective assistance of counsel. There is no requirement for an attorney to prognosticate future law in order to render effective

---

[20] The Supreme Court has previously held that "[t]he accepted definition of bodily 'member' is 'bodily part or organ[.]" *Mitchell v. State*, 238 Ga. 167, 168 (231 SE2d 773) (1977) (citation omitted).

[21] See OCGA § 16-5-24 (a).

16

representation. Counsel is not obligated to argue beyond existing precedent.[22]

As a result, trial counsel was not ineffective for failing to file a motion in arrest of judgment.

*(c) Objection to the State's Closing Argument*

Thompson contends that the State made several objectionable comments during closing argument. Specifically, Thompson complains about the following remarks:

"And what the indictment has the defendant charged with is what we believe he actually did. We believe his acts were intentional."

"And what I would like to do is go through what the State believed happened."

"And I can't say it enough that the State believes that he had intention."

---

[22] (Citations and punctuation omitted.) *Moss v. State*, 311 Ga. 123, 129-130 (2) (b) (856 SE2d 280) (2021) (discerning no ineffective assistance of counsel for failing to argue that the abdomen is not a member of the body because existing precedent did not resolve that legal argument).

"But if I know a gun is loaded and the hammer is back, I'm not going to play around with this thing."

Regardless of whether these remarks violate the prohibition on a prosecutor expressing personal opinions about the evidence as Thompson contends,[23] Thompson cannot establish that he was prejudiced as a result. The State presented strong evidence of Thompson's guilt, as recounted above. Moreover, the judge charged the jury that the comments of counsel in closing argument were not evidence and that the verdict must be based upon evidence. As a result, this claim of ineffective assistance of counsel also fails.[24]

---

[23] See, e. g., *Wyatt v. State*, 267 Ga. 860, 864 (2) (a) (485 SE2d 470) (1997).

[24] See *Lofton v. State*, 309 Ga. 349, 366 (6) (b) (iv) (846 SE2d 57) (2020) ("In order to prevail on this claim of ineffective assistance of counsel, Appellant must show that counsel's deficiency prejudiced him[.] He has not carried this burden. First, the trial court instructed the jury that it was not permitted to be influenced by sympathy for either party and that arguments of counsel are not evidence, and generally we presume that juries follow the trial courts' instructions. Second, despite the State's improper appeals to sympathy, . . . the State presented strong evidence of Appellant's guilt as a party to the crime for which he was convicted, and the jury was charged on parties to a crime. Given the trial court's instructions and the strong evidence of Appellant's guilt as a party to the charged crimes, we cannot conclude that there is a reasonable probability that the outcome of his trial would have been different had his counsel objected to the State's improper arguments. Accordingly, Appellant has failed to show that he was denied the effective assistance of counsel.") (citations omitted).

*(d) Failure to Object to the Jury Charge on Aggravated Battery*

Thompson contends that the trial court incorrectly charged the jury as to aggravated battery and that his trial counsel was ineffective for failing to object. For the reasons discussed above in Division 2, this argument is moot.

*(e) Failure to Request a Lesser Included Charge of Reckless Conduct*

Thompson argues that his trial counsel was ineffective for failing to request a lesser included charge of reckless conduct[25] for attempted murder and aggravated battery. For the reasons explained in Division 2, this argument is moot as to Thompson's conviction for aggravated battery.

As it relates to Thompson's conviction for attempted murder, Thompson's argument fails because he cannot demonstrate prejudice. Even if there was some evidence presented which could have supported a charge on reckless conduct as a lesser included charge of attempted murder, the evidence of Thompson's intent to harm the victim was strong and the evidence that his conduct was accidental or merely

---

[25] "A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor." OCGA § 16-5-60 (b).

19

reckless was weak. As recounted in more detail above, the jury heard significant evidence of Thompson's history of intentional violence against the victim as well as evidence that she was attempting to finally cut him off financially shortly before the crime. Consequently, Thompson has failed to establish a reasonable probability that the result of the trial would have been different if his counsel had requested a reckless conduct charge.[26]

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

[26] See *Hinton v. State*, 304 Ga. 605, 607-608 (2) (820 SE2d 712) (2018) ("Even assuming, dubiously, that some evidence was presented at [defendant's] trial to support a charge of voluntary manslaughter, that evidence was minimal. By contrast, the State presented strong evidence that [defendant] was guilty of the predicate felonies of attempted armed robbery and aggravated assault—the crimes on which his felony murder counts were based. . . . Because the evidence of [defendant's] guilt was strong, and any evidence supporting a voluntary manslaughter theory was weak, [defendant] has failed to establish a reasonable probability that the jury would have reached a different result, even if it had been charged on voluntary manslaughter.").