## S96A0665. WALDRIP v. THE STATE.
(471 SE2d 857)

SEARS, Justice.

The appellant, John Mark Waldrip, was convicted of the felony murder of Keith Evans and of kidnapping with bodily injury, aggravated assault, influencing a witness, and possession of a firearm by a convicted felon. Although the state sought the death penalty and the jury found several aggravating circumstances, the jury recommended that John Mark receive a life sentence.[1] John Mark appeals, contend-

---

[1] The crimes occurred on April 13, 1991. John Mark was indicted during the February 1991 term of the grand jury for Dawson County. The state gave its notice of intent to seek the death penalty on May 20, 1991. This Court granted an interim review in this case, and rendered a decision on June 27, 1994. *Livingston v. State*, 264 Ga. 402 (444 SE2d 748) (1994). The jury returned its verdict of guilty on May 18, 1995, and its recommendation of a life

ing that the trial court erred in having lunch with the jurors on the day they were selected to serve; that the trial court erred in admitting several statements of his co-conspirator and father, Tommy Lee Waldrip, into evidence; that the court erred in failing to give his requested charges on reckless conduct and involuntary manslaughter; that the evidence is insufficient to support his convictions for felony murder, aggravated assault, and kidnapping with bodily injury; that the trial court erred during opening statements in permitting the prosecutor to read verbatim the text of a conversation between Tommy Lee and himself when the court had specifically reserved until trial a ruling on the admissibility of that conversation; and that the trial court erred in allowing the state to introduce similar transaction evidence. For various reasons, we find no merit to most of these issues. Further, although the better practice would have been for the trial court not to have had lunch with the jury, we conclude that the record demonstrates that no prejudice resulted to John Mark from the trial court having done so. Similarly, we conclude that, even if the prosecutor should not have specified the content of Tommy Lee's conversation with John Mark in opening statement because the trial court had reserved a ruling on the admissibility of the conversation until trial, the fact that the prosecutor did so did not prejudice John Mark and does not require a reversal. We thus affirm John Mark's convictions.

1. The state presented evidence showing that the murder victim, Keith Evans, was the only eyewitness to an armed robbery, for which John Mark Waldrip had been indicted. Evans testified against John Mark on the armed robbery charge, resulting in John Mark's conviction. The trial court, however, granted John Mark's motion for a new trial. The new trial was scheduled to begin April 15, 1991.

On April 3, 1991, Robert Garner, John Mark's accomplice in the armed robbery, for the first time gave a statement to the police implicating himself and John Mark in that robbery. Garner was scheduled to testify against John Mark at the retrial. However, some time after dinner on the evening of April 13, Waldrip telephoned Robert Garner and asked him if he were going to testify against him. Garner testified that he told John Mark that he would not. According to Garner, John Mark then responded that he had "worked hard on this case and it's right where I want it," and that he (Garner) had better not "burn him."

---

sentence on May 19, 1995. The court reporter certified the transcript on June 11, 1995. John Mark filed a motion for new trial on June 14, 1995, and an amended motion for new trial on November 1, 1995. The trial court denied the motion for new trial on November 21, 1995. John Mark filed his notice of appeal on December 19, 1995. The appeal was docketed in this Court on January 12, 1996, and was orally argued on April 15, 1996.

Keith Evans, like Garner, was scheduled to testify against John Mark at the retrial for armed robbery. Evans, however, disappeared on April 13, and late that night, his pickup truck was found burned on a rural highway. Suspicion focused on John Mark Waldrip, and on April 14, police spoke first with Tommy Lee Waldrip and Linda Waldrip (Tommy Lee's wife), and later that day spoke with John Mark. Tommy Lee's April 14 statement was introduced into evidence at trial. In it, he stated that about 7:00 p.m., he had gone to see someone about buying a car; that he ate supper and watched TV; that about 9:00 p.m., he went by himself to see his wife's brother, Howard Livingston; and that about 11:00 p.m., he returned home. In John Mark's April 14 statement, he stated that early in the afternoon of April 13, his father had dropped him off at a pool room, where he met three people. John Mark stated that one of those people brought him home about 11:00 p.m., but that he could not remember if the other two friends were with him at that time. All three of the people that John Mark named testified at trial. They stated that the GBI interviewed them on April 14, and that they told the GBI that they had not seen John Mark on April 13. They reiterated at trial that they had not seen John Mark that day.

On April 15, the prosecution asked for a continuance on the armed robbery charge because Evans had not been located and because Garner had informed the prosecutor on April 14 that John Mark had threatened him and that he would not testify against John Mark. The trial court granted the prosecution a continuance.

Because John Mark's contact with Garner violated John Mark's conditions for bond, his bond was revoked and he was incarcerated. On April 15, while in jail awaiting the robbery retrial, Waldrip stated, in the presence of his cellmates, that the state did not have a case on the robbery charge because one of the witnesses who was supposed to testify against him had been killed and another had "smelled the coffee" and would not be testifying against him.

On April 18, 1991, the body of Keith Evans was discovered. He had been beaten with a blunt object, shot twice with a shotgun, and buried in a shallow grave. That same day, Tommy Lee was interviewed by the police and confessed that he and Howard Livingston had killed Evans. He stated that he, Livingston, and John Mark were in Tommy Lee's truck on April 13 when they saw the victim's truck drive by. Tommy Lee stated that he then let John Mark out of his truck, and that he and Livingston followed the victim, ran him off the road, and killed him. Later in the day on April 18, John Mark and Tommy Lee asked to see each other. They were permitted to do so in the presence of a police officer. The officer testified that his job was to insure that Tommy Lee and John Mark did not discuss the case so as to "get their stories together." During the conversation, Tommy Lee

told John Mark that he (Tommy Lee) had told the police both that he and Livingston had killed Evans and that John Mark was not there because Tommy Lee and Livingston had made John Mark walk home. The officer then stopped Tommy Lee and John Mark from having any further conversation. Still later in the day on April 18, John Mark gave a statement to police that was introduced into evidence at trial. In that statement, John Mark admitted being in the truck with his father and Livingston when they saw the victim's truck. He also stated that his father let him out of the truck before chasing down and killing Evans. As for the shotgun that his father had in his truck, John Mark added that Tommy Lee "ought to have took the gun just to keep . . . Evans, to make him listen, to stop him or whatever. I didn't believe for one minute he would kill that boy."

Contrary to John Mark's fourth enumeration of error, we conclude that the foregoing evidence was sufficient to support his convictions for felony murder, kidnapping with bodily injury, and aggravated assault.[2]

2. In his first enumeration of error, John Mark contends that the trial court committed reversible error when it accompanied jurors, outside the presence of John Mark and his counsel, to lunch the day after they were empaneled. Although we strongly caution trial judges against such practices, we conclude that no prejudice resulted to John Mark under the circumstances of this case.

Before the trial began, the trial judge stated that he had had lunch with the jurors the day after they were selected. The lunch occurred at the hotel at which the jurors were sequestered. The judge stated that he had done so to ensure the jurors' comfort and convenience, and that he and the jurors had engaged in "informal chitchat" unrelated to the case. John Mark objected and made a motion for mistrial, which the trial court denied. After the jury returned its verdict, the trial judge called each of the jurors into the courtroom one at a time to place on the record their recollection, if any, of anything the trial judge might have said to them at lunch. All of the jurors stated that nothing the judge said or did had any influence in their verdict at either the guilt-innocence or sentencing phases of the trial. Six of the jurors stated that they could not remember anything that the judge said to them. Another of the jurors stated that she knew "for a fact we did not talk about anything related to the case," and others related specific small talk that they recalled. One of the jurors, Mr. Blackwell, recalled that "[w]e was talking about my little granddaughter and my wife and I told you [the judge] if those two girls come up I might have to break the law and I showed you a picture."

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The juror stated that the judge responded that he "might do the same thing." After all the jurors had been questioned, the judge stated that before lunch began that day, he gave the jury some brief preliminary sequestration instructions because the day before, when the jury had been selected, court had run late into the evening, and the judge had not at that time given them copies of their sequestration instructions.

We have held that "all communications with the jury are to be discouraged except in open court with all persons present."[3] Further,

> "[t]he rule is well established in this State, that the defendant on trial must be present when the court takes any action materially affecting his case." *Andrews v. State*, 196 Ga. 84, 94 (26 SE2d 263) (1943); see *Wanzer v. State*, 232 Ga. 523, 526 (207 SE2d 466) (1974). "This right is guaranteed to the accused by the fundamental law of this State, in order that he and his counsel may see to it that he has a fair and impartial trial and that nothing is done that would in any wise tend to his prejudice. Unquestionably the trial judge should not in any manner communicate with the jury about the case, in the absence of the accused and his counsel, pending the trial; and the better practice is for the judge to have no communication with the jury on any subject except through the medium of the sworn bailiff in charge of the jury; and the communication should be restricted, in the absence of the accused and his counsel, to matters relating to the comfort and convenience of the jury. There should be no communication which would tend in any manner to prejudice the accused (for instance, to hasten a verdict against him, or to induce jurors who might be for him to yield their convictions); and unless the character of the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial, and the accused would be entitled to another trial." [Cits.][4]

In *Logan*,[5] a juror asked the trial court out of the presence of the defendant and his counsel what would happen if the jury could not reach a decision on the case. The court responded in part that " 'I'll have to charge you on what the consequences of that are. It's a mistrial. We'd have to try it all over again, so I'm going to ask you all to

---

[3] *Berryhill v. State*, 235 Ga. 549, 554 (12) (221 SE2d 185) (1975).
[4] *Stewart v. State*, 165 Ga. App. 428, 429-430 (2) (300 SE2d 331) (1983). Accord *Logan v. State*, 266 Ga. 566 (2) (468 SE2d 755) (1996); *Collins v. State*, 191 Ga. App. 289, 290 (381 SE2d 430) (1989); *Hurston v. State*, 206 Ga. App. 570, 572 (2) (426 SE2d 196) (1992).
[5] 266 Ga. at 567 (2).

do your best to come up with a decision.' "[6] We held that, although the trial court erred in communicating with the jury outside the defendant's presence, the error was not prejudicial to the defendant and did not require a reversal of his conviction.[7]

In the present case, the record demonstrates that the trial court's communication with the jury was more innocuous than that in *Logan* and was not prejudicial to John Mark. In this regard, the trial court's statements, coupled with the juror's responses to the trial court's questions, show that the court's communication with the jurors was for the jurors' comfort and convenience and that the conversations between the judge and the jurors consisted of talk unrelated to the case and of no potential prejudice to John Mark. We need only specifically explain why the trial court's communication with juror Blackwell was not prejudicial.

John Mark contends that the court's communication with Mr. Blackwell was prejudicial in that the trial court expressed a belief that it was proper to break the law under certain circumstances. We disagree. Given that the trial court had just given the jurors preliminary sequestration instructions, and given that Mr. Blackwell referred to his wife and granddaughter and stated that if they "come up, I" might have to break the law, we can only conclude that Mr. Blackwell was merely commenting on the difficulty of being sequestered and that the trial court's comment merely reflected his understanding of that difficulty. Further, because Mr. Blackwell indicated that his conversations with the trial judge did not have any effect upon his decisions in the case, and because Mr. Blackwell could not recall any discussion of John Mark's case, we conclude that the communication with Mr. Blackwell was not prejudicial to John Mark. For these reasons, we find no merit to this enumeration.

3. John Mark next contends that the trial court erred by admitting, under the co-conspirator's exception to the hearsay rule, Tommy Lee's April 14 and April 18 statements to the police, as well as Tommy Lee's April 18 conversation with John Mark.

First, we note that John Mark did not object at trial to the admissibility of Tommy Lee's April 18 statement to the police and therefore may not raise that issue on appeal.[8] Likewise, as for John Mark's objection that the April 14 statement of Tommy Lee and the April 18 conversation between Tommy Lee and John Mark were inadmissible because the conspiracy had come to an end, this objection also was not made at trial and therefore may not be raised on appeal.[9]

---

[6] Id.

[7] Id.

[8] *Earnest v. State*, 262 Ga. 494, 496 (3) (422 SE2d 188) (1992).

[9] Id.

We next address John Mark's contention that the April 14 statement of Tommy Lee and the April 18 conversation between Tommy Lee and himself were inadmissible under the co-conspirator exception to the hearsay rule because there was insufficient evidence to establish a conspiracy. We find no merit to this contention. The pendency of the conspiracy includes the commission of the crime itself, as well as the concealment of the crime or the identity of the perpetrators or both.[10] Further, the conspiracy may be proven by circumstantial evidence.[11] We conclude that there was sufficient evidence outside of the statements of Tommy Lee Waldrip to make out a prima facie case of a conspiracy by John Mark, Tommy Lee, and Livingston to protect John Mark from prosecution for armed robbery by killing Evans and then to protect John Mark from prosecution for that crime by concealing his participation therein. Moreover, the trial court had broad discretion regarding the order of proof and did not err in allowing introduction of the statements before presentation of the prima facie case of conspiracy where the prima facie case was established by all the evidence at trial.[12] Finally, contrary to John Mark's contention, we find nothing in the record that demonstrates that the trial court relied on evidence previously introduced at Tommy Lee's trial and at pretrial hearings in John Mark's trial to support its ruling that the state had made out a prima facie case of conspiracy.

4. John Mark next contends that the trial court erred by allowing the state to read verbatim the text of the April 18 conversation between John Mark and Tommy Lee in its opening statement. John Mark raises two issues in this regard. The first is that the prosecutor should not have been allowed to read the transcript verbatim. The next is that the prosecutor should not have been allowed to state what he expected this conversation to show because John Mark had challenged the admissibility of the conversation and the trial court had reserved a ruling on that issue pending trial.

As for John Mark's contention that the prosecutor should not have been allowed to read the transcript verbatim, John Mark failed to object to the opening statement on this ground and therefore has waived his right to raise the issue for the first time on appeal.[13]

We turn next to John Mark's contention that the prosecutor should not have read the text of the conversation because he knew the conversation had not been ruled admissible. In this regard, we have held that in an opening statement, it is improper for a prosecutor to refer to a defendant's statement when the court has yet to hold

---

[10] *Welch v. State*, 237 Ga. 665, 676 (229 SE2d 390) (1976).

[11] Id.

[12] *Bruce v. State*, 263 Ga. 273, 274 (430 SE2d 745) (1993).

[13] *Earnest*, 262 Ga. at 496.

a *Jackson-Denno* hearing and determine the admissibility of the statement.[14] In *Brown,* the defendant's statement was ruled inadmissible at trial, but we found no harm to the defendant because "the reference was to 'statements,' a neutral term, rather than 'confessions.' The district attorney did not go into the content of the statements but merely referred in passing to them."[15] In *Hubbard v. State,*[16] the Court of Appeals relied on *Brown* to hold that it was improper for the prosecutor in his opening statement to refer to a co-defendant's "statement" that had not been ruled admissible. Because the prosecutor used the term "statement" instead of "confession," and because the court subsequently ruled during the trial that the statement was admissible, the Court of Appeals found no harm to the defendant.[17] Similarly, federal circuit courts have ruled that a prosecutor acts improperly when he refers to the confession of a co-defendant in his opening statement when the admissibility of the confession is questionable and the trial court has yet to rule on the issue.[18] For such improper conduct to be reversible, the federal courts require that the conduct "prejudicially affect[ ] the defendant's substantial rights so as to deprive the defendant of a fair trial."[19] In making this determination, the courts consider, among other things, whether the trial court later ruled at trial that the evidence referred to in the opening statement was admissible.[20]

In the present case, even assuming that the prosecutor acted improperly in referring to the April 18 conversation in his opening statement because the prosecutor knew that an issue existed as to the statement's admissibility, we conclude that there was no reversible error. First, the conversation did not contain a confession by John Mark and although it contained a confession by Tommy Lee, unlike some of the cases cited above, Tommy Lee's statements in the conversation, including the statement that he and Howard Livingston had committed the crime, did not affirmatively implicate John Mark as a participant in the killing itself. Further, during the trial, the court ruled that the conversation was admissible, and the text of it was read to the jury. For these reasons, we find no prejudice and no reversible error.[21]

---

[14] *Brown v. State,* 250 Ga. 862, 865 (2) (302 SE2d 347) (1983).
[15] Id.
[16] 210 Ga. App. 141 (2) (435 SE2d 709) (1993).
[17] Id.
[18] *United States v. Hernandez,* 779 F2d 456, 459 (1, 2) (8th Cir. 1985); *United States v. Simmons,* 567 F2d 314, 321 (7th Cir. 1977); *United States v. Stone,* 472 F2d 909, 914 (5th Cir. 1973); cert. denied, 449 U. S. 1020 (101 SC 586, 66 LE2d 482) (1980).
[19] *Hernandez,* 779 F2d at 458.
[20] *Hernandez,* 779 F2d at 459; *Simmons,* 567 F2d at 321-322; *Stone,* 472 F2d at 914.
[21] E.g., *Simmons,* 567 F2d at 321-322; *Hubbard,* 210 Ga. App. at 144.

5. We find no merit to John Mark's remaining two enumerations of error, in which he contends that the trial court erred in failing to give his requested charges on reckless conduct and involuntary manslaughter and that the trial court erred in admitting similar transaction evidence. For the foregoing reasons, we affirm John Mark's convictions.

*Judgment affirmed. All the Justices concur.*

CARLEY, Justice, concurring.

I join the majority's opinion affirming appellant's conviction. With regard to the prosecutor's opening statement concerning the April 18 conversation between appellant and Tommy Lee Waldrip, the majority assumes, without deciding, "that the prosecutor acted improperly in referring to the April 18 conversation in his opening statement." The majority then holds that, if error, it was harmless and not reversible. I fully agree. However, I believe that, based upon *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983) and *Hubbard v. State*, 210 Ga. App. 141 (435 SE2d 709) (1993) and the majority's analysis of persuasive authority, the trial court did err in allowing any reference to the April 18 conversation because the prosecutor knew that the court had specifically reserved the issue of admissibility of that statement.

DECIDED JULY 1, 1996.

*Curtis W. Miller, Neil A. Smith*, for appellant.
*Lydia J. Sartain, District Attorney, Lee Darragh, Assistant District Attorney, Michael J. Bowers, Attorney General, Wesley S. Horney, Assistant Attorney General*, for appellee.