319 Ga. 34
FINAL COPY

S24A0094. MAYO v. THE STATE.

COLVIN, Justice.

Appellant Justin Scott Mayo appeals his convictions for malice murder and other crimes related to the beating death of his girlfriend, Stephanie Smith.[1] Appellant argues that the trial court

---

[1] Smith died on November 4, 2017. On December 19, 2017, a White County grand jury indicted Appellant for one count of malice murder (Count 1), one count of felony murder (Count 2) predicated on a count of aggravated assault (Count 3), and an additional two counts of felony murder (Counts 4 and 6), each of which was predicated on a separate count of aggravated battery (Counts 5 and 7). Appellant was tried by a jury from March 2 to March 6, 2020. Following the close of the State's evidence, the trial court granted Appellant's motion for directed verdict as to Counts 4 through 7, thereby acquitting Appellant of two counts of felony murder and the two counts of aggravated battery on which those felony murder counts were predicated. On March 6, 2020, the jury found Appellant guilty of all the remaining counts: malice murder (Count 1), felony murder (Count 2), and aggravated assault (Count 3). On March 10, 2020, Appellant was sentenced to life in prison without the possibility of parole for malice murder (Count 1). Though the trial court purported to merge Counts 2 and 3 into Count 1, Count 2 was actually vacated by operation of law. See *Williams v. State*, 316 Ga. 147, 153 (3) (886 SE2d 818) (2023).

On April 1, 2020, Appellant filed a timely motion for new trial, which he subsequently amended through new counsel on August 10, 2020, and again on October 25, 2022. Because Appellant's motion for new trial concerned the trial judge's ex parte communication with the jury, Appellant filed a motion to recuse on April 17, 2020, which Appellant supplemented with an additional filing on the same day. Appellant's motion to recuse was granted on May 9,

committed two reversible errors: (1) the trial court presented the jury with a "confusing" verdict form that was inconsistent with the jury charge; and (2) the trial court received and responded to a note from the jury during its deliberations without informing the parties, thereby depriving Appellant of his right to be present throughout the proceedings against him under Article I, Section I, Paragraph XII of the Georgia Constitution and his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution.[2] For the reasons stated below, Appellant's claims fail.

2022, and a different judge was appointed to hear Appellant's motion for new trial. Following the subsequent judge's appointment, the trial court held a hearing on Appellant's motion for new trial on November 22, 2022, and denied it by written order on January 27, 2023. On February 24, 2023, Appellant filed a timely notice of appeal directed to this Court. The case was assigned to the term of this Court beginning in December 2023 and decided on the briefs.

[2] Appellant never states expressly whether his claims arise under the United States Constitution or the Georgia Constitution. Though he does not cite either constitution, Appellant avers in his brief that he "raised both the state and federal constitutional violations of *Lowery* [*v. State*, 282 Ga. 68 (646 SE2d 67) (2007)] and the failure to follow this Court's *Lowery* procedures" during the hearing on his motion for new trial. *Lowery* concerned a defendant's right to be present at trial under the Georgia Constitution and his right to counsel under the Sixth Amendment to the United States Constitution. See *Lowery*, 282 Ga. at 73 (4) (b). Appellant also cites *Carter v. State*, 273 Ga. 428 (541 SE2d 366) (2001) and *Hanifa v. State*, 269 Ga. 797 (505 SE2d 731) (1998), each of which concerns a defendant's right to be present at trial under Article I, Section I, Paragraph XII of the Georgia Constitution. See *Carter*, 273 Ga. at

2

1. At approximately 2:00 p.m. on November 4, 2017, Appellant entered the White County Sheriff's Office and told the detention officer at the front desk that he thought his girlfriend, Smith, was dead. Law enforcement officers were dispatched to Appellant and Smith's shared residence, where they found a trail of bloodstains from Smith's car in the driveway, along the front porch, to the door, which had been kicked in. Inside, Smith was found deceased, lying nude in her bed, covered by a blanket and a small red towel or washcloth over her eyes. Her body exhibited numerous and extensive injuries, and the bedroom itself was littered with broken and overturned objects. There appeared to be bloodstains on the floor, and there were large amounts of dried blood in the nearby bathroom.

---

429-430 (3); *Hanifa*, 269 Ga. at 807 (6). We therefore conclude that Appellant's challenge to the trial court's alleged infringement of his right to be present concerns Appellant's right under the Georgia Constitution and that his claim regarding effective assistance of counsel is raised under the United States Constitution. We remind counsel to cite those portions of the constitutions on which they rely. See Supreme Court Rule 19 (1) (g) (requiring the appellant's brief to contain an argument section which "cite[s] the authorities relied on"); Supreme Court Rule 22 (2) ("[B]riefs must contain full and complete citations of authority.").

While law enforcement officers were searching Appellant's home, Appellant remained at the White County Sheriff's Office. There, he gave one written statement and two oral statements to law enforcement officers. Appellant's second oral statement was video-recorded, admitted into evidence at trial, and played for the jury. In Appellant's second oral statement, which was consistent with his first, Appellant explained that he and Smith had gone out the prior evening with Smith's friends to two bars in Helen, Georgia. Appellant stated that he "black[ed] out" from alcohol, but that he partially remembered getting into a verbal fight with Smith in Helen because she had been flirting with and "touching" another man at one of the bars. Appellant further stated that he did not remember whether he or Smith drove them home, but that he had some memory of getting into a physical fight with Smith during the drive, kicking in the front door, and continuing the altercation before and after Smith took a bath. Though Appellant's reported memory of the events was incomplete, he admitted that he was the sole person responsible for Smith's death.

A subsequent autopsy revealed the extent of Smith's injuries. According to the testimony of Dr. John Wassum, an assistant medical examiner for the GBI, Smith had dozens of contusions across the front and sides of her body consistent with blunt-force trauma. There were at least ten contusions on her face, covering both cheeks and both eyes, her forehead, chin, jawline, and earlobe. Further injuries consistent with blunt-force trauma were found on her abdomen, chest, arms, and hands, as well as on her knees, shins, and both ankles. An internal examination revealed that Smith had two broken ribs and a "large[,] ragged laceration" on her liver, which caused large amounts of internal bleeding. Smith also had a hematoma that was "diffuse across the entire scalp," as well as subdural and subarachnoid hemorrhages in her brain. The fifth cervical vertebra in her neck was broken, which, in Dr. Wassum's opinion, was likely caused by the blunt-force trauma to her chin. Dr. Wassum determined that Smith's cause of death was blunt-force trauma to her head, neck, and torso.

At trial, Appellant conceded through counsel that he had killed

Smith but argued that the jury should find him guilty only of voluntary manslaughter, rather than of murder.

2. On appeal, Appellant argues that the sequencing of the verdict form — which listed pre-printed options for malice murder, felony murder, voluntary manslaughter, and aggravated assault, in that order — was "confusing" because it was inconsistent with the jury instructions in two related, but distinct ways. First, Appellant claims that, though the trial court correctly instructed the jury that it could return a verdict of guilty of voluntary manslaughter for either Count 1 (malice murder) or Count 2 (felony murder), the verdict form listed voluntary manslaughter only after Count 2. In Appellant's view, the form therefore "implied that voluntary manslaughter was not a valid alternative for malice murder in Count 1." Second, Appellant argues that the verdict form incorrectly implied that the jury was required to determine whether Appellant was guilty of malice murder and felony murder before considering voluntary manslaughter, contrary to the court's jury charge, which correctly provided that the jury must determine if there were

6

mitigating circumstances that would reduce either Count 1 or Count 2 to voluntary manslaughter before it was authorized to return a verdict on either count. While both issues arise from the trial court's choice to list options for malice murder, felony murder, and voluntary manslaughter in that order, they present distinct challenges to the verdict form, and, as explained below, only the first of these claims was preserved for ordinary appellate review. We accordingly treat them separately, and, after review, conclude that both fail.

(a) During its charge to the jury, the trial court instructed the jury on Appellant's presumption of innocence, the State's burden of proof, and reasonable doubt. The court also instructed the jury on malice murder, felony murder, and voluntary manslaughter.

In defining malice murder, the court explained that "[a] person commits murder when that person unlawfully and with malice aforethought, either express or implied, causes the death of another human being." The court further instructed the jury that "[l]egal malice is not necessarily ill will or hatred, but it is an unlawful

7

intention to kill *without* justification, excuse, or *mitigation.*"

(Emphasis supplied.) When defining felony murder, the court stated

that "[a] person also commits the crime of murder when, in the

commission of a felony, that person causes the death of another

human being with or without malice." Following the court's

instructions regarding malice murder and felony murder, it stated:

> After consideration of all the evidence, *before* you would be authorized to return a verdict of guilty of malice murder *or* felony murder, you must *first* determine whether mitigating circumstances, if any, would cause the offenses to be reduced to voluntary manslaughter.

 (Emphasis supplied.)

The court then defined voluntary manslaughter as

follows:

> A person commits voluntary manslaughter when that person causes the death of another human being under circumstances that would otherwise be murder if that person acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.

 After explaining voluntary manslaughter, the trial court

stated:

The burden of proof is upon the State to prove beyond a reasonable doubt that the offense is not so mitigating. If you do not believe beyond a reasonable doubt the defendant is guilty of murder in Count 1 or felony murder in Count 2, but do believe beyond a reasonable doubt that the defendant is guilty of voluntary manslaughter, then you would be authorized to find the defendant guilty of voluntary manslaughter *as to that respective count* and the form of your verdict in that event would be: ["]We, the jury, find the defendant guilty of voluntary manslaughter["] *as to that count.*

(Emphasis supplied.) The court did not instruct the jury on any other circumstances in which it was authorized to return a guilty verdict for voluntary manslaughter.

The trial court prepared a verdict form but did not discuss it with the parties during the charge conference. The form began with Count 1 (malice murder) and provided pre-printed options for the jury to mark whether it found Appellant "guilty" or "not guilty." The form then listed the same options for Count 2 (felony murder). Following Count 2, the form stated:

After considering the evidence in this case:
( ) We, the jury, finds [sic] the evidence **DOES** show sufficient mitigation and that [Appellant] [is] **guilty** of the offense of **VOLUNTARY MANSLAUGHTER**.
( ) We, the Jury, finds [sic] the evidence **DOES NOT** show

9

sufficient mitigation and that [Appellant] [is] **not guilty** of the offense of **VOLUNTARY MANSLAUGHTER**.

(Emphasis in original.) The form concluded by listing the options of guilty and not guilty for Count 3, aggravated assault.

Immediately following the jury charge, Appellant objected to the verdict form on the ground that it was inconsistent with the jury instructions. Appellant argued then, as he does now, that the verdict form should begin with voluntary manslaughter, rather than murder, so as to make it consistent with the jury charge. The trial court overruled Appellant's objection.

During the jury's deliberations, the jury wrote a note to the trial court asking, "On Count 2, if we find the defendant guilty of felony murder[,] do we mark anything on the second section indicating guilty or not guilty of voluntary manslaughter?" This note was delivered by the bailiff to the trial judge in chambers. Neither party was alerted at that time to the jury's note nor consulted about the trial court's response. The trial judge wrote on the note, "No, you will leave that portion blank," and the note was returned to the jury.

When the jury finished deliberating, it was asked to read its verdict, and the jury foreperson pronounced the defendant guilty of Counts 1 and 2. After the foreperson read Count 2, the trial judge interrupted and asked, "And before we go any further, . . . did the jury consider . . . whether there were any mitigating circumstances that would justify voluntary manslaughter?" The foreperson responded, "Yes." The court then asked the foreperson to continue, and the foreperson announced that the jury had found Appellant guilty of Count 3, aggravated assault. Consistent with the trial court's response to the note, the jury left blank the portion of the verdict form regarding voluntary manslaughter. The jury was polled, and each member confirmed the verdict.

(b) A verdict form in a criminal case is erroneous when "the form would mislead jurors of reasonable understanding, or the trial court erroneously instructed the jury on . . . the possible verdicts that could be returned, or how the verdict should be entered on the printed form." *Ruff v. State*, 314 Ga. 386, 388 (2) (877 SE2d 239) (2022) (citation and punctuation omitted). When determining

11

whether there is error regarding a preprinted verdict form, the "form is treated as part of the jury instructions which are read and considered as a whole." *Atkins v. State*, 310 Ga. 246, 252 (3) (850 SE2d 103) (2020) (citation and punctuation omitted). See also *Rowland v. State*, 306 Ga. 59, 67-68 (6) (829 SE2d 81) (2019) ("In deciding whether a verdict form accurately presented the law and properly guided the jury, we review the form's language in conjunction with the rest of the trial court's jury instructions.").

(i) As an initial matter, the State argues that Appellant failed to preserve for ordinary appellate review his argument that voluntary manslaughter should have also been included on the verdict form immediately after Count 1, as it had been after Count 2, because Appellant failed to object on that specific ground at trial. See OCGA § 17-8-58 (providing that a party who objects to any portion of the jury charge must "inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate," and that a failure to make such an objection "shall preclude appellate review of such portion of the jury charge, unless

12

such portion of the jury charge constitutes plain error which affects substantial rights of the parties"). We agree, and therefore review for plain error Appellant's claim that the trial court should have listed voluntary manslaughter after Count 1, in addition to Count 2. See *Jones v. State*, 303 Ga. 496, 501 (III) (813 SE2d 360) (2018) (applying plain error review under OCGA § 17-8-58 where the appellant objected to the jury charge but did not "make the specific objection that he now raises on appeal"); *Cheddersingh v. State*, 290 Ga. 680, 682-683 (2) (724 SE2d 366) (2012) (applying plain error review under OCGA § 17-8-58 to an unpreserved claim regarding the verdict form). To show plain error,

> the appellant must demonstrate that the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

*State v. Owens*, 312 Ga. 212, 219 (3) (862 SE2d 125) (2021) (citation and punctuation omitted). The failure to meet a single element of this test "dooms a plain error claim." *Rogers v. State*, 311 Ga. 634,

638 (3) (859 SE2d 92) (2021) (citation and punctuation omitted).

Here, Appellant has failed to show that the trial court's decision to include an option on the verdict form for voluntary manslaughter only after Count 2 instead of after both murder counts likely affected the outcome of the proceedings. Though there may have been better ways to formulate or sequence the verdict form, see *Chapman v. State*, 258 Ga. 214, 217 (4) (367 SE2d 541) (1988) ("We reiterate here our opinion . . . that it would be safer to omit preprinted terms of 'guilty' and 'not guilty' from any verdict form submitted to the jury and to require the verdict be completed by the hand of the jury." (citation omitted)), the trial court correctly instructed the jury that voluntary manslaughter was an option for both murder counts. Specifically, as recounted above, the trial court instructed the jury that it was required to determine "whether mitigating circumstances . . . would cause the offenses" of malice murder or felony murder "to be reduced to voluntary manslaughter." The court further instructed the jury that if it did not believe Appellant was guilty of malice murder or felony murder but did

14

believe beyond a reasonable doubt that Appellant was guilty of voluntary manslaughter, then it "would be authorized to find the defendant guilty of voluntary manslaughter *as to that respective count*." (Emphasis supplied.) In light of these instructions, the correctness of which Appellant concedes, and which we are required to view together with the verdict form, it is likely that the jury understood the verdict form's preprinted options for voluntary manslaughter were meant to apply to both counts of murder, rather than only to Count 2 (felony murder), and it is unlikely that the structure of the verdict form affected the outcome of the proceedings with respect to Count 1, as Appellant contends. We therefore conclude that the trial court did not plainly err by listing voluntary manslaughter only after Count 2. See *Leeks v. State*, 296 Ga. 515, 522 (6) (769 SE2d 296) (2015) (holding that it was not error for the trial court to refuse, over objection, to use a special verdict form listing voluntary manslaughter after each count of murder, and to instead use a general verdict form with pre-printed options of "guilty" and "not guilty" where the court instructed the jury on

15

voluntary manslaughter and where there was "sufficient space underneath each count for the jury to write in a lesser included offense or another offense").

Appellant appears to argue that the jury note implied the jurors were "confused" and they did not understand that voluntary manslaughter was a possible alternative to malice murder. As stated above, the jury asked, "On Count 2, if we find the defendant guilty of felony murder[,] do we mark anything on the second section indicating guilty or not guilty of voluntary manslaughter?" Appellant appears to suggest that the framing of the jury's question, which concerns only Count 2, shows that the jury did not have similar questions with respect to Count 1. This further implies that the jury did not have such questions because they did not understand that they could convict Appellant of voluntary manslaughter for Count 1.

To the extent any such implication arises, however, it is insufficient to rebut "the presumption that qualified jurors, in the absence of *clear* evidence to the contrary, followed the instructions

16

of the trial court" to consider voluntary manslaughter with respect to each of Appellant's murder charges. *Herring v. State*, 277 Ga. 317, 321 (6) (c) (588 SE2d 711) (2003) (emphasis supplied). The fact that the jury failed to ask a similar question with respect to Count 1 is not clear evidence that the jurors ignored the court's instructions or that they were confused: it could be that the jury asked this question after considering any mitigating evidence and determining that Appellant was guilty of felony murder, but before reaching a consensus on malice murder, and that the Court's response to its question forestalled further similar questions. Other explanations are possible. As such, the jury note falls short of the clear evidence needed to rebut the presumption of jurors' adherence to the court's instructions. See *Herring*, 277 Ga. at 321 (6) (c).

(ii) In Appellant's second claim regarding the verdict form, he argues that the form improperly listed malice murder and felony murder before voluntary manslaughter, thereby implying that the jury should determine its verdicts on those charges prior to considering whether there was mitigating evidence that would

17

reduce these charges. Though Appellant preserved this claim for ordinary appellate review by objecting at trial, his claim fails.

In *Van v. State*, 294 Ga. 464 (754 SE2d 355) (2014), this Court considered an almost identical argument regarding the use of a verdict form that listed malice murder, felony murder, and voluntary manslaughter in the same order as the form used here. See *Van,* 294 Ga. at 467 (4). There, we held that "[m]erely listing the offenses on the verdict form in order of malice murder, felony murder, and voluntary manslaughter did not constitute reversible error" where the trial court had otherwise properly instructed the jurors on the presumption of innocence, the State's burden of proof, the possible verdicts that could be returned, and how to enter the verdict on the printed form. Id.

Appellant concedes that the trial court's formal charge to the jury — which covered Appellant's presumption of innocence, the State's burden of proof, the possible verdicts for each charge and how to enter such verdicts on the printed form — was correct, but he contends that the trial court erroneously instructed the jury

regarding the verdict form when responding to its note. We therefore consider whether the court erred in this regard.

As recounted above, during the jury's deliberations, it sent a note to the court asking, "On Count 2, if we find the defendant guilty of felony murder[,] do we mark anything on the second section indicating guilty or not guilty of voluntary manslaughter?" and the court responded, "No, you will leave that portion blank." Appellant argues that this response was erroneous: in Appellant's view, the court's response was akin to "telling the jury it should not even make a decision on voluntary manslaughter if it voted to convict on felony murder."

Appellant has raised two issues with the court's response, arguing that, consistent with this instruction, (1) the jury could determine Appellant was guilty of felony murder without considering whether there were mitigating circumstances that would reduce that offense to voluntary manslaughter or (2) the jury could determine that Appellant was guilty of both felony murder and voluntary manslaughter (but leave the portion of the verdict

19

corresponding to voluntary manslaughter blank, in accordance with the court's instruction).[3]

We do not construe the court's response to the note in a vacuum, however; it was but one instruction that must be considered together with the court's other instructions as a whole. Appellant argues that the court's response permitted the jury to find the defendant guilty of felony murder without considering evidence in mitigation. But, as we have already noted, the court previously instructed the jury that it "must first determine" whether there were mitigating circumstances that would reduce felony murder to

---

[3] These options would be problematic because, as we explained in *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992), a defendant cannot be convicted of both felony murder and voluntary manslaughter for the same underlying assault, and because, where there is at least slight evidence of voluntary manslaughter, "[a] sequential charge requiring the jury to consider voluntary manslaughter *only* if it has considered and found the defendant not guilty of malice murder and felony murder is not appropriate." (Emphasis in original.)See *Edge*, 261 Ga. at 865-867 (2). We have held, however, that where, as here, the court instructs the jury it must first determine whether "mitigating evidence, if any, would cause the offense to be reduced to voluntary manslaughter," before the jury is "authorized to return a verdict of guilty of malice murder or felony murder," the jury charge is not improperly sequential in violation of *Edge*. See *Elvie v. State*, 289 Ga. 779, 780 (2) (716 SE2d 170) (2011) (explaining that the pattern charge referenced above "has frequently been relied upon in determining that the jury was not given improper sequential instructions in violation of *Edge*").

voluntary manslaughter "before" the jury "would be authorized to return a verdict of guilty" on the felony murder count. When the court's response to the jury note is considered together with this instruction, Appellant's first argument fails. It makes no difference that the court did not recharge the jury that it must first determine whether there were mitigating circumstances before it was authorized to find the defendant guilty of felony murder: because the jury did not request a recharge on this instruction, the court was within its sound discretion not to give it. See *Barnes v. State*, 305 Ga. 18, 23 (3) (823 SE2d 302) (2019) ("A trial court has a duty to recharge the jury on issues for which the jury requests a recharge. As a general matter, however, where no such request has been made [by the jury], the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court." (citation and punctuation omitted)).

Appellant's second argument also fails. Appellant claimed at trial that if the jury followed the trial court's direction to leave a portion of the verdict form blank, we would not know if the jury

found Appellant guilty of both felony murder and voluntary manslaughter. But the only circumstance under which the court authorized the jury to return a verdict of guilty of voluntary manslaughter for Count 2 was if, after considering evidence in mitigation, the jury did "not believe beyond a reasonable doubt the defendant is guilty of . . . felony murder." Specifically, the court instructed the jury that a guilty verdict of voluntary manslaughter for Count 2 required the following: (1) proof by the State of "every essential element" of felony murder "beyond a reasonable doubt"; (2) the State's failure "to prove beyond a reasonable doubt that the offense [was] not . . . mitigat[ed]"; and (3) proof beyond a reasonable doubt that Appellant "cause[d] the death of another human being under circumstances that would *otherwise* be murder" (emphasis supplied); but for (4) the jury's determination beyond a reasonable doubt that Appellant acted "solely as a result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." Further, as previously explained, the court instructed the jury that it must

22

consider evidence in mitigation before returning a verdict of guilty for felony murder. Considering the court's response to the note together with its previous instructions, as we must, the trial court's instructions did not permit the jury to find the defendant guilty of both felony murder and voluntary manslaughter at the same time while leaving the voluntary manslaughter portion of the verdict form blank. Thus, in the context of the court's other instructions, the court's response was within its discretion and not incorrect. See *White v. State*, 291 Ga. 7, 9 (3) (727 SE2d 109) (2012) (no error where the trial court accepted a verdict that found the defendant guilty of felony murder but left the portion of the verdict form corresponding to voluntary manslaughter blank); *Barnes*, 305 Ga. at 23 (3).

Appellant nonetheless argues that the jury's note shows it had already determined Appellant was guilty of felony murder without considering voluntary manslaughter, in violation of the jury charge. We disagree. Because the jury note asked how to complete the verdict form "if" the jury found the defendant guilty of murder, we cannot conclude from it that the jury had already made such a

23

determination or that it made such a determination without first considering evidence in mitigation. This is especially true where the jury foreperson later confirmed during his recitation of the verdict that the jury *had* considered evidence in mitigation as instructed. See *Herring*, 277 Ga. at 321 (6) (c) ("While a verdict form that demonstrates the jury considered and rejected voluntary manslaughter is helpful, its absence does not overcome the presumption that qualified jurors, in the absence of clear evidence to the contrary, followed the instructions of the trial court to consider voluntary manslaughter before considering the felony murder charge." (citation omitted)).

Because the trial court's response to the note was not incorrect and because the foreperson confirmed, during the return of the verdict and in response to the judge's question, that the jury did in fact follow the court's instructions, *Van* controls Appellant's claim regarding the allegedly erroneous ordering of the charges on the verdict form. Appellant's claim therefore fails. See *Van*, 294 Ga. at 467 (4) (holding that where the jury was properly instructed on the

presumption of innocence, the State's burden of proof, and the possible verdicts that could be returned, "[m]erely listing the offenses on the verdict form in order of malice murder, felony murder, and voluntary manslaughter did not constitute reversible error").

3. In his final enumeration of error, Appellant argues that the trial court violated both his right under Article I, Section I, Paragraph XII of the Georgia Constitution to be present during the criminal proceedings against him and his right under the Sixth Amendment to the United States Constitution to the effective assistance of counsel by receiving and responding to the jury note outside the presence of the parties and without consulting counsel regarding the court's response. Because we agree that the trial court mishandled its response to the jury note, we assume without deciding that the trial court violated Appellant's right to counsel under the United States Constitution and his right to be present under the Georgia Constitution. We nevertheless conclude, however, that the court's assumed violation of Appellant's right to counsel was

harmless beyond a reasonable doubt and that the rebuttable presumption of harm arising from the court's assumed violation of Appellant's right to be present was overcome by the evidence, as explained further below.

(a) The parties did not become aware of the note described above until after the trial court dismissed the jury. After the jury departed, the trial court informed counsel for both parties that it had received the note described above, explained its response, and gave the parties a chance to inspect the note, which was marked as Court's Exhibit 1 and entered into the record.

Appellant objected to the trial court's communication with the jury outside of the presence of the parties. Appellant also objected to the trial court's procedure insofar as it failed to notify the parties of the note until after the jury was dismissed, thereby depriving Appellant of the chance to move timely for mistrial. Appellant nevertheless attempted to move for mistrial, which the trial court denied before Appellant could state the grounds for his motion. The trial judge then adjourned the trial and instructed the court reporter

to stop transcribing the proceedings, even though Appellant's counsel was still attempting to articulate the grounds for his motion.[4]

(b) In *Lowery v. State*, 282 Ga. 68 (646 SE2d 67) (2007), we exercised our "inherent power" to announce a set of rules governing jurors' communications with the trial court (the "*Lowery* Rules"). *Lowery*, 282 Ga. at 76 (4) (b) (ii). Under the *Lowery* Rules, trial courts are required

> to have jurors' communications submitted to the court in writing; to mark the written communication as a court exhibit in the presence of counsel; to afford counsel a full opportunity to suggest an appropriate response; and to make counsel aware of the substance of the trial court's intended response in order that counsel may seek whatever modifications counsel deems appropriate before the jury is exposed to the instruction.

Id.[5] The State does not dispute that the trial court failed to follow

---

[4] We do not condone the conduct of the trial court. The trial court violated the procedures set forth in *Lowery*, 282 Ga. 68, and the court's attempt to end the proceedings and close the record while counsel was still attempting to articulate the grounds for his motion for mistrial was inappropriate.

[5] As we noted in *Styles v. State*, 309 Ga. 463 (847 SE2d 325) (2020), "[s]ome of us have questions as to the propriety of our unilateral

27

these procedures.

Though we have applied harmless error analysis to claims arising from a trial court's failure to follow the *Lowery* Rules, see, e.g., *Styles v. State*, 309 Ga. 463, 469 (3) (847 SE2d 325) (2020); *Grant v. State*, 295 Ga. 126, 129 (4) (757 SE2d 831) (2014), we have applied heightened standards of review where an appellant asserts that the trial court violated a constitutional right in the course of a *Lowery* violation. Where, as here, an appellant argues that a trial court violated his right to the assistance of counsel under the Sixth Amendment by failing to follow the *Lowery* Rules, we have applied federal precedent requiring the State to show that any such error is harmless beyond a reasonable doubt. See *Lowery*, 282 Ga. at 75-76 (4) (b) (ii) (citing *Chapman v. California*, 386 U. S. 18, 24 (III) (87 SCt 824, 17 LE2d 705) (1967)). See also *Muse v. State*, 316 Ga. 639, 657-658 (5) (c) (889 SE2d 885) (2023) (citing *Lowery* and applying a constitutional harm standard).

---

pronouncement of a new rule of procedure in *Lowery*, rather than through the rule-making process established by the Georgia Constitution." *Styles*, 309 Ga. at 469 (3) n.6.

Where, however, an appellant raises a right-to-be-present claim under the Georgia Constitution regarding substantive communications between the court and the jury during its deliberations outside the parties' presence, we have instead applied a rebuttable-presumption-of-harm standard. See *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998) (stating that "unless the character of the communication" between the court and the jury "clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial" (citation and punctuation omitted)), disapproved of on other grounds by *Clark v. State*, 315 Ga. 423 (883 SE2d 317) (2023). See also *Fuller v. State*, 277 Ga. 505, 506 (2) (591 SE2d 782) (2004) (quoting *Hanifa*, 269 Ga. at 807 (6)); *Waldrip v. State*, 266 Ga. 874, 878-879 (2) (471 SE2d 857) (1996) (holding that the presumption of error that arose from the trial judge eating lunch with the sequestered jury was overcome and that the error was harmless).[6]

---

[6] As we explained at length in *Champ v. State*, 310 Ga. 832 (854 SE2d 706) (2021), we have been inconsistent regarding whether the presumption of

(c) It is undisputed that the trial court failed to follow the *Lowery* Rules. Nevertheless, Appellant's claims fail. Assuming without deciding that the trial court's receipt of and response to the jury note outside the presence of Appellant and his counsel violated Appellant's right to be present under the Georgia Constitution and his right to effective assistance of counsel under the United States Constitution, these errors were harmless under the applicable standards of review explained above.

(i) We turn first to Appellant's right-to-counsel claim. The assumed violation of Appellant's right to counsel arose from the trial

---

harm arising from a violation of the defendant's right to be present is rebuttable. See *Champ*, 310 Ga. at 845 (2) (c) n.10. There, we noted that while Georgia courts "began saying more consistently and squarely that violations of the Georgia Constitution's right to be present are not subject to harmless error analysis" by the late 1990s, "this Court and the Court of Appeals have continued to treat one type of right-to-be-present violation — communications between trial courts and jurors without the defendant present — as subject to a rebuttable presumption of prejudice." Id. We further stated that "[i]t is not clear . . . whether the automatic-reversal position . . . is the correct rule for all cases, for certain categories of cases, or for no cases. We would be amenable to reconsidering our recent holdings in a case in which the issue is fully briefed." Id. Here, Appellant cites *Hanifa* and *Carter* for the proposition that a rebuttable presumption of harm applies. Because Appellant does not ask us to reconsider these cases or to otherwise resolve our case law regarding whether the presumption of harm is rebuttable, we decline to do so here. But, as we said in *Champ*, id., we remain amenable to such arguments if properly raised in a future case.

30

court's response to the jury note outside the presence of counsel. That note concerned the mechanical process of completing the verdict form, rather than the law regarding the charges presented. And the trial court's response — which directed the jury to leave blank the portion of the verdict form corresponding to voluntary manslaughter if it found the defendant guilty of felony murder — concerned that same mechanical process.

By responding to the jury without consulting counsel, the trial court deprived Appellant of the opportunity to inspect the note, to offer a proposed response, or to object to the trial court's response. See *Phillips v. Harmon*, 297 Ga. 386, 392-393 (I) (B) (774 SE2d 596) (2015) (explaining the consequences of a court's failure to disclose a jury note to the parties and their counsel). We have already concluded, however, that in the context of the instructions as a whole, the court's substantive response to the jury's note was not incorrect and was within the trial court's discretion. See Division 2 (b) (ii), supra. It is therefore unclear what guidance, if any, Appellant or Appellant's trial counsel could have provided the court

31

with respect to its response that would have altered the outcome of the proceedings, and Appellant does not propose any such guidance on appeal. We also consider that though the trial court did not disclose the note until after it dismissed the jury, it did ultimately inform counsel. This disclosure permitted Appellant's counsel to request that the note be made a part of the record and to object to the court's procedure. Though the court did not permit Appellant's counsel to articulate the grounds of his motion for mistrial, the court's disclosure ensured that Appellant could litigate the correctness of the trial court's response at the motion for new trial and on appeal, as he did. Each of these considerations leads us to the conclusion that this assumed error was harmless. Compare *Phillips*, 297 Ga. at 393 (I) (B) (concluding there was harmful error where the jury's note was not preserved and differing recollections of the timing of the note meant that the plaintiffs were unable to litigate whether the trial court properly responded to the note).

Further, and more importantly, we have held that when the jury has been charged on voluntary manslaughter and it "returns a

verdict of malice murder, it, of necessity, finds that the defendant committed the homicide without the provocation sufficient to authorize a verdict of guilty of voluntary manslaughter." *Terry v. State*, 263 Ga. 294, 295 (430 SE2d 731) (1993) (citation and punctuation omitted). See also *Stanley v. State*, 300 Ga. 587, 591 (2) (797 SE2d 98) (2017) (same); *Johnson v. State*, 300 Ga. 665, 668 (4) (a) (797 SE2d 903) (2017) (same); *Dyal v. State* 297 Ga. 184, 187-188 (4) (773 SE2d 249) (2015) (same). This is so because, as the court instructed the jury, "[l]egal malice . . . is an unlawful intention to kill without justification, excuse, or *mitigation*." (Emphasis supplied.) See, e.g., *Tessmer v. State*, 273 Ga. 220, 222 (2) (539 SE2d 816) (2000) ("Malice means the intent to take a life without legal justification or mitigation."); *Bailey v. State*, 70 Ga. 617, 621 (2) (1883) ("[M]alice . . . is an unlawful intention to kill, without justification, or mitigation."). Thus it was the jury's finding that Appellant killed his girlfriend with malice, rather than the potentially faulty verdict form, that eliminated a determination that Appellant was guilty only of voluntary manslaughter. See *Dyal*, 297

Ga. at 188 (4). Cf. *Swayzer v. State*, 263 Ga. 690, 691 (1) (436 SE2d 652) (1993) (holding that because the jury found the defendant guilty of malice murder, any error in giving an improperly sequential jury charge in connection with felony murder and voluntary manslaughter was harmless). We therefore conclude that the error arising from the trial court's assumed violation of Appellant's right to counsel under the Sixth Amendment to the United States Constitution is harmless beyond a reasonable doubt.

(ii) Many of these same considerations affect our analysis of the harm that arose from the trial court's assumed violation of Appellant's right to be present. As stated above, we apply a rebuttable presumption of harm where the court engages in a substantive communication with the jury outside the presence of the defendant. See *Hanifa*, 269 Ga. at 807 (6). Even where the communication is substantive, however, the presumption of harm that arises may be overcome by evidence that the communication did not affect the outcome of the trial. See *Waldrip*, 266 Ga. at 877-879 (2). In *Waldrip*, the trial court attended lunch with the jurors at

the hotel at which they were sequestered, outside the presence of the defendant and his counsel. Id. at 877 (2). The judge later informed the parties and explained that he and the jurors had engaged in "informal chitchat" unrelated to the case. Id. Defense counsel immediately moved for a mistrial, but his motion was denied. Id. After the jury returned a guilty verdict, the trial court questioned each of the jurors on the record about his or her recollection of this lunch. Id. Though many of the jurors could not recall their conversations with the judge or confirmed that they had engaged in only small talk, one of the jurors testified that he told the judge that if his wife and granddaughter were to come to the area, he "might have to break the law" related to his sequestration. Id. According to this juror, the trial judge responded that he "might do the same thing" if he were in the juror's position. Id. at 878 (2). The juror testified, however, that nothing the judge said or did affected his decisions regarding the verdict. Id. at 878, 879 (2). Each other juror testified to the same. Id. at 877 (2). Notwithstanding its recognition that a presumption of harm arose from the judge's ex

parte communications with the jury, see id. at 878 (2), the *Waldrip* Court concluded that the error was harmless because each member of the jury confirmed that there was no effect upon the verdict. Id. at 879 (2).

Turning to Appellant's case, the court's communications with the jurors were substantive insofar as they concerned the process of completing the verdict form, but we have already concluded that the court's failure to consult with counsel was harmless beyond a reasonable doubt because this failure did not affect the outcome of the trial. See Division 3 (c) (i), supra. As explained above, the court's response to the note was not incorrect; the court acted within its discretion to forgo further instruction; and the jury considered evidence in mitigation but nevertheless found Appellant guilty of malice murder. Two conclusions follow. First, like his trial counsel's absence, Appellant's absence during the Court's written communications with the jury did not affect the outcome of the trial. Second, because these communications did not affect the outcome of the trial, the presumption of harm from the assumed violation of

Appellant's right to be present was overcome. See *Waldrip*, 266 Ga. at 879 (2) (concluding that the presumption of harm arising from the defendant's involuntary absence during a discussion between the trial judge and a juror regarding sequestration had been overcome because the discussion did not affect the outcome of the trial). As such, we conclude that the presumption of harm arising from the court's assumed violation of Appellant's right to be present is rebutted by the evidence.

This result is not inconsistent with our decision in *Phillips v. Harmon* because that case is distinguishable. See *Phillips*, 297 Ga. at 392-393 (I) (B). There, the trial court responded to multiple notes outside the presence of the parties and their counsel, and we concluded that the trial court's violation of the civil defendants' right to be present was harmful. See *Phillips*, 297 Ga. at 393 (I) (B). Among our reasons for concluding there was harm, we noted that the jury notes were not disclosed to the plaintiffs until several weeks after the trial, that the court had failed to preserve one of those notes for the record, and that the judge and some of the jurors had

different recollections about the nature and timing of their communications. See id. Unlike *Phillips*, these circumstances are not present here: the note was disclosed immediately after the jurors were dismissed, the court preserved the note as part of the record, and there is no dispute about the timing of the judge's correspondence with the jury. Perhaps most importantly, we further stated in *Phillips* that "the inability to make a determination that a verdict for Defendants was demanded, regardless of any effect of the communication on the jury, support[s] Plaintiffs' entitlement to a new trial." Id. Here, we have made an opposite conclusion: a verdict for the State on voluntary manslaughter was demanded by the jury's determination, regardless of the court's response to the note, given the foreperson's confirmation that the jury considered evidence in mitigation and the jury's finding that Appellant committed malice murder. As such, it is appropriate to reach a different result here.

*Judgment affirmed. All the Justices concur.*

Decided May 14, 2024.

Murder. White Superior Court. Before Judge Cornwell, Senior Judge.

*John R. Monroe*, for appellant.

*W. Jeffrey Langley, District Attorney, Kelly R. Holloway, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Meghan H. Hill, Senior Assistant Attorneys General, Stephany J. Luttrell, Assistant Attorney General*, for appellee.